1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RANA WILKINSON,

                              Plaintiff,

          v.

PIERCE COUNTY,

                              Defendant.

CASE NO. 3:19-cv-05533-BHS-BAT

**REPORT AND
RECOMMENDATION**

Defendant Pierce County moves for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. 16. Plaintiff Rana Wilkinson alleges Pierce County interfered with the exercise of her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 and Washington Family Leave Act ("WFLA"), RCW 49.78.300 (repealed and titled under RCW 50A); was constructively discharged in violation of public policy (the WFLA); and was retaliated against for filing complaints concerning the health and safety of employees in violation of the Washington Industrial Safety and Health Act, RCW 49.17.160. Dkt. 1-2.

Ms. Wilkinson concedes that her retaliation claim under RCW 49.17.160 may be dismissed because she failed to file a complaint within the statutory 30 days (Dkt. 22, p. 21), but opposes the remainder of Pierce County's motion. Dkt. 22. In its reply, Pierce County filed a separate motion to strike (Dkt. 23, pp. 2-3) and the Court invited Ms. Wilkinson to file a surreply to address the evidentiary objections only. Dkt. 25. Ms. Wilkinson filed a surreply and declaration. Dkt. 26; Dkt. 26-1, Declaration of Rana Wilkinson.

For the reasons stated herein, the undersigned recommends that Pierce County's motion for summary judgment (Dkt. 16) be **granted**.

FACTS

A.    Maintenance Technician Employment History

Ms. Wilkinson has worked for the Pierce County Public Works since 2003. In October of 2011, she was promoted to Maintenance Technician. Dkt. 22-1 Declaration of Chalmers Johnson, Ex. 24 (Deposition of Wilkinson), 12:1-13, Ex. 1. Ms. Wilkinson held this position until her resignation on December 11, 2018. *Id.*, Wilkinson Dep. 12:14-17.

A maintenance technician's essential functions and duties include traffic control, vegetation maintenance, chip sealing, operating a vacuum truck, flagging, placing traffic control devices, and performing preventative maintenance on equipment. Other job functions include fueling and lubricating vehicles, picking up and delivering parts and supplies, cleaning and washing vehicles and equipment, and light janitorial work. Dkt. 22-1, Ex. 24, Wilkinson Dep. 15:12-15, 17:7-12, 17:16-20, 18:3-9, Ex. 2. A maintenance technician is required to hold valid Commercial Driver's License (CDL). *Id.*, Wilkinson Dep. 19:2-4, Ex. 2.

B.    Complaints Made by Ms. Wilkinson

    1.    2016 Complaint

In 2016, Ms. Wilkinson reported several safety violations to the Washington State Department of Labor and Industries (L&I), including that Pierce County was failing to comply with state requirements to vaccinate workers against Hepatitis B. Dkt. 18, Cowger Decl., Ex. A, Wilkinson Dep. 40:16-23, 41:9-15; Dkt. No. 1-2 at 3; Dkt. 20, Declaration of Kirk Stenger, p. 2; Dkt. 21, Declaration of Bruce Wagner, p. 1. An investigation revealed that workers on the "Vactor" program (entering confined spaces and using the vacuum truck to clean out storm

drains) were exposed to needles and were at risk for blood borne pathogens like Hepatitis B. Pierce County was cited and fined more than $12,000.00. Dkt. 20, Stenger Decl. at 2; Dkt. 21, Wagner Decl. at 1; Dkt. 1-2 at 3; Dkt. 26-1, Ex. 1, 2. Ms. Wilkinson's name was on the report that led to the citation. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., pp. 42-43. Pierce County was not notified that Ms. Wilkinson made the complaint. Dkt. 21, Declaration of Bruce Wagner, ¶¶ 6-7.

Ms. Wilkinson alleges that after she filed this complaint, her supervisors retaliated against her by removing her from the Vactor program; depriving her of overtime pay and overtime opportunities; and excluding her from meetings, classes and discussions. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., pp. 43-45; 47-50.

2.    2017 Complaint

On November 14, 2017, Ms. Wilkinson made an online complaint to Pierce County Human Resources (PCHR) regarding the safety of boom truck and crane operators being asked to operate their machinery in high winds. She also reported that she heard a manager call those employees "puss eeze"[1] when they refused to operate in conditions that they considered unsafe. Ms. Wilkinson named Jeff Campbell, Bruce Wagner, Jeff Skoda, and Mike Lowman as "Managers involved in and contributed to the harassment." Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., pp. 84:22-24, 86:5-87:5, Ex. 11; Dkt. 1-2 at 3.

During January 2018, PCHR investigated the complaint and interviewed several employees. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., Ex. 12 (Ryan DeForrest, Duell Helman, Mike Lowman). PCHR determined there may have been a violation for use of

---

[1] Ms. Wilkinson testified that the word "pussies" is misspelled on the form she submitted as "puss eeze" because "the language was so profound that the format would not allow [her] to spell it correctly." Dkt. 22-1, Johnson Decl., Ex. 24, p. 86.

1    inappropriate language, and those involved were counseled and provided training. *Id.*

2        3.    2018 Complaint

3        On September 2, 2018, Ms. Wilkinson filed another report with L&I, in which she

4    reported the November 14, 2017 incident (tree cutting and offensive language) and renewed her

5    complaint that Pierce County was not providing Hepatitis B vaccinations for seasonal

6    maintenance workers. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., p. 64. Ms. Wilkinson

7    also stated in this report that she was being retaliated against: "[l]ess than 90 days later, after

8    filing the complaint I was locked in a[n] office by two male supervisors, retaliated against and

9    assaulted. I was denied union representation and when I tried to leave, I had to push my way past

10   to leave. I have been set up for failure and asked to do tasks that aren't reasonable. As of August,

11   I have been suspended from work."[2] Dkt. 26-1, Wilkinson Decl., Ex. 10.

12       As to the retaliation/discrimination portion of Ms. Wilkinson's complaint, L&I

13   determined that the case did not meet the criteria for further investigation "because there was no

14   engagement in a protected activity as outlined in the statute…". Dkt. 26-2, Wilkinson Decl., Ex.

15   11. Pierce County was not contacted or notified of any investigation of this claim and no L&I

16   inspection took place. Dkt. 20, Stenger Dec., ¶ 9; Dkt. 21, Wagner Decl., ¶ 11.

17       As to the hygiene and safety portion of Ms. Wilkinson's report, L&I inspected Pierce

18   County Central Maintenance and fined Pierce County for failing to provide the Hepatitis B

19   vaccines. Dkt. 26-1, Wilkinson Decl., Ex. 12; Dkt. 21, Wagner Decl., ¶ 9. Pierce County was not

20   notified of the identity of the complainant and was not aware that Ms. Wilkinson made the

21   complaint. *Id.*, ¶ 11.

22

23

---

[2] The details of this incident and Ms. Wilkinson's suspension are discussed in more detail in Paragraph C below.

REPORT AND RECOMMENDATION - 4

C.    Speeding Ticket

In November 2017, Ms. Wilkinson was cited for speeding on the way to work. When she arrived at work she stated, "I'm sorry I'm almost late. I had a ticket this morning." Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 30:1-2. Ms. Wilkinson was convicted of the speeding violation on December 12, 2017. *Id.*, Wilkinson Dep. 26:13-15. Ms. Wilkinson did not formally report the traffic conviction. Dkt. 1-2, p. 4. Persons with a commercial driver's license ("CDL") must notify their employer within 30 days after the date of conviction. 49 CFR 383.31(b).

1.    February 8, 2018 Meeting for CDL Compliance

Following an annual driving abstract review, Pierce County became aware of the speeding conviction. On February 8, 2018, Ms. Wilkinson's supervisor, Tyler Bemis, told her that she had to report her speeding conviction. Ms. Wilkinson confirmed that she had verbally reported it and that Mr. Bemis told her that "even verbally would do." Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., pp. 29-30.

2.    February 9, 2018 Meeting for CDL Compliance

On February 9, 2018, Mr. Bemis and Road Maintenance Supervisor Jeff Campbell told Ms. Wilkinson that she had to comply with the CDL reporting requirements and that she had to report the traffic conviction in writing using an appropriate form. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 25:5-6, 26:20-24; 30:6-9, 31:16:21, Ex. 5. Ms. Wilkinson acknowledges that they gave her a form to report her conviction but not the information necessary to complete the form. Ms. Wilkinson claims this information was in the driving abstract, which Mr. Bemis and Mr. Campbell refused to give her. *Id.*, 25:17-26:5.

Ms. Wilkinson testified that during this meeting, Jeff Campbell followed her into Mr. Bemis' office and locked the door behind him. She requested but was denied a Union witness,

and Mr. Campbell screamed at her and accused her of violating the collective bargaining agreement. Ms. Wilkinson was frightened and when she tried to leave the room, Mr. Campbell stepped in front of her and pushed against her arm. She then unlocked the door and left. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., 59:1-20.

On February 27, 2018, Ms. Wilkinson's attorney Peter Petrich, wrote to the Director of Pierce County Public Works stating that Ms. Wilkinson was being subjected to harassment, bullying, and retaliation regarding her November 2017 complaint. He described the February 9, 2018 meeting, Ms. Wilkinson's allegation that she was assaulted by Mr. Campbell, and her medical treatment for severe stress as a result. He asked that Pierce County investigate and take steps to protect Ms. Wilkinson from harassment and intimidation in the workplace. Dkt. 26-1, Wilkinson Decl., Ex. 8. On March 30, 2018, the Employee Relations Manager from the Pierce County Human Resources Department ("PCHR") replied, stating "[w]e have looked into the new allegations in your letter regarding alleged behavior by County supervisors on February 9, 2018, and we have also taken the appropriate action." *Id*.

4.    February 13, 2018 Meeting for CDL Compliance

On February 13, 2018, Mr. Bemis, and Field Supervisors Paul Berg and Troy Deforrest met with Ms. Wilkinson again, directed her to formally report her conviction, and gave her the form. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 27:3-12. Ms. Wilkinson did not submit the form at that time. *Id.*, Ex. 5.

5.    Post Meeting Discipline

On April 13, 2018, Maintenance Manager Paul Marsh issued a Memorandum of Expectations to Ms. Wilkinson, which detailed the specific statute requiring compliance of reporting, the deadline for doing so, and potential disciplinary action for failure to comply. Dkt.

1  22-1, Johnson Decl., Ex. 24, Wilkinson Dep., Ex. 5.

2       On April 13, 2018, Ms. Wilkinson asked her supervisor Tyler Bemis to allow her to use

3  company time and a company vehicle to go to the district court to recover the information

4  regarding her traffic ticket, but he denied her request. Dkt. 22-1, Johnson Decl., Ex. 24,

5  Wilkinson Dep., 26:6-11.

6       On June 22, 2018, Ms. Wilkinson reported the February 9, 2018 incident to the Pierce

7  County Sheriff's Department. The Sheriff filed an incident report for simple assault. Dkt. 26-1,

8  Wilkinson Decl., Ex. 7. Mr. Campbell denies that he assaulted Ms. Wilkinson and did not know

9  that Ms. Wilkinson made the L&I complaints. Dkt. 17, Declaration of Jeff Campbell, ¶¶ 10-11.

10       On July 12, 2018, after Ms. Wilkinson was given a Notice of Intent to Suspend Letter

11  informing her of a ten-day suspension for failing to comply with the CDL requirements and

12  insubordination. *Id.*, Wilkinson Dep. 33:5-13, Ex. 6. Ms. Wilkinson requested a "*Loudermill*

13  hearing" and a meeting was scheduled with Deputy Director Toby Rickman for July 17, 2018.

14  Ms. Wilkinson did not attend the meeting because the meeting was not placed on her daily

15  dispatch sheet. *Id.*, 35:1-3.

16       On August 1, 2018, Ms. Wilkinson, along with her union representative Terra Ament,

17  met with Toby Rickman. Ms. Wilkinson explained why she believed the discipline should not be

18  imposed. *Id.*, 36:4-11. On August 13, 2018, Mr. Rickman issued a Notice of Suspension,

19  suspending Ms. Wilkinson for ten-days (80 hours without pay) based on a "willful violation of

20  Federal Code at 49CFR 383.31(b) and failure to follow a supervisor's lawful directive

21  (insubordination)." *Id.*, Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., 36:12-37:6, Ex. 8. Ms.

22  Wilkinson grieved the suspension, but the grievance was denied. *Id.*, 38:16-24.

23

REPORT AND RECOMMENDATION - 7

D.    <u>FMLA Leave and Return to Work</u>

At the end of September 2018, Ms. Wilkinson applied for medical leave for 40 days for back surgery, which was approved. 26-1, Wilkinson Decl., Ex. 18; Ex. 19. When Ms. Wilkinson returned to work on November 26, 2018, she returned to her former Maintenance Technician position, with the same pay, and she reported to the same location (Purdy). Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 77:16-25. During dispatch, Maintenance Supervisor Jeff Skoda called Ms. Wilkinson into his office to go over the safety sensitive functions, such as washing vehicles, that she would be performing while awaiting the results of her return to work drug test. Dkt. 19, Declaration of Jeff Skoda Dec. at 2; Dkt. 1-2 at 6. "Safety sensitive" functions fall within the job description of a Maintenance Technician but do not require a CDL. Dkt. 19, Skoda Decl., ¶¶ 7-14. The return to work drug test is required for CDL holders if they have been off work for more than 30 days. *Id*., ¶ 10; 49 C.F.R. § 382.301.

Mr. Skoda to Ms. Wilkinson that she would report to the Central Maintenance Facility (CMF) (Spanaway) the next day and remain there until the results of the drug screen were received. *Id.* Dkt. 19, Skoda Decl., ¶ 9. Ms. Wilkinson received a work order placing her at the CMF with the duty of "Washing Trucks" for the next 40 work hours. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep., pp. 72, 73-75; Dkt. 26-1, Wilkinson Decl., Ex. 12.

Mr. Skoda asked Ms. Wilkinson to try to log on to her computer so that she could complete Open Enrollment, but she said she would not do so until he provided her with the RCW requiring the drug test, which he did not have with him. Dkt. 19, Skoda Dec., p. 3.  at 3. She then left the office for an appointment. However, Ms. Wilkinson did not return to work and resigned on December 11, 2018. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 78:19-22; Dkt. 1-2 at 6; Dkt. 19, Skoda Dec., p. 3.

1    Ms. Wilkinson wrote out several statements to confirm that Mr. Skoda was assigning her

2    to the CMF on November 27, 2018 and she asked Mr. Skoda to sign them, but he refused. Dkt.

3    26-1, Wilkinson Decl., Ex. 21. Mr. Skoda acknowledges that Ms. Wilkinson requested that she

4    sign a piece of paper, but he did not do so because he did not have time at that moment to read it.

5    *Id.*, ¶ 15. Ms. Wilkinson testified that when she went back to work, Mr. Skoda told her "[y]ou're

6    not welcome here [at Purdy] anymore." Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson Dep. 61:9-

7    11. Before she left the office that day, Ms. Wilkinson exchanged several emails with her Union

8    representative Terra Ament, regarding the drug testing, Ms. Wilkinson's request to be assigned

9    to a location other than the CMF because it was "too close to Jeff Campell", and the denial of

10   that request. Dkt. 26-1, Wilkinson Decl., Ex. 14.

11   In a separate email to Faith Ferreria at PCHR, Ms. Wilkinson advised that she was on a

12   leave of absence under the FMLA and did not feel comfortable reporting to a work location

13   "where [she] will be subjected to Jeff Campbell's behavior. There is a police report stemming

14   from the February 9th altercation." Dkt. 26-1, Wilkinson Decl., Ex. 15, p. 66. Ms. Wilkinson

15   provided PCHR with the appropriate FMLA paperwork from her doctor, who took her out of

16   work from that day "until further notice" and related her mental distress to "hostile work

17   environment + workplace retaliation." Dkt. 26-1, Wilkinson Decl., Ex. 15. On November 28,

18   2018, Ms. Wilkinson's FMLA leave request was disapproved as it was a work-related condition.

19   Dkt. 26-1, Wilkinson Decl., Ex. 20.

20   On December 11, 2018, Ms. Wilkinson submitted a letter of resignation, stating that she

21   had been and was still experiencing harassment related to her workplace safety complaints in

22   2015. Dkt. 26-1, Wilkinson Decl., Ex. 16.

23

E.    Random Drug Testing

Wanda Davis, an Administrative Program Manager, testified that the Pierce County

Alcohol and Controlled Substances Testing Policy and Procedures contains the requirement that

an employee holding a CDL must obtain a return to work drug screen after they have been off

work, and out of the random testing pool, for 30 or more days. Dkt. 25, Declaration of Wanda

Davis, pp. 1-2, Ex. A. Ms. Davis notifies the PCHR when an employee physically returns to

work and PCHR then issues a passport and paperwork to the employee's supervisor with

instructions to the employee to complete the testing. *Id.*, p. 2.

On the day Ms. Wilkinson returned to work, Ms. Davis emailed PCHR at 8:48 a.m.

requesting that a passport for Ms. Wilkinson's drug test be issued as soon as possible. *Id.*, Ex. B.

At 12:24 p.m., Ms. Davis cancelled the request as Ms. Wilkinson had left work and it was not

known when she would be available for testing. Ms. Davis intended to send another request the

next day, but Ms. Wilkinson never returned to work. *Id.* Mr. Skoda later learned Ms. Wilkinson

went to the testing facility after she left work, but he had not advised her to do so as he had not

yet received the paperwork from PCHR. Dkt. 19, Skoda Decl., ¶¶ 27-28.

According to Ms. Davis, the turn-around time for a return to work drug screen varies

from approximately three days to a week depending on PCHR's staffing levels and workload and

lab processing time. Dkt. 25, Davis Decl., p. 3.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to

the nonmoving party, there is no genuine dispute as to any material fact that would preclude the

entry of judgment as a matter of law. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th

Cir.2000). The party seeking summary dismissal of a claim "bears the initial responsibility of

REPORT AND RECOMMENDATION - 10

informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001); *Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir.1991). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir.1995).

<u>MOTION TO STRIKE</u>

In its reply, Pierce County moves to strike "those portions of [Ms. Wilkinson's brief] that contain information not supported by the evidence or the record" and all exhibits offered by Ms. Wilkinson in opposition to the motion for summary judgment (except Exhibits 9 and 24) on the grounds of authentication and hearsay. Dkt. 23, pp. 2-3. The exhibits offered by Ms. Wilkinson were originally attached to the declaration of her attorney. *See* Dkt. 22-1, Johnson Decl. In her surreply, Ms. Wilkinson attaches the exhibits to her declaration and describes the exhibits based on her personal knowledge. Dkt. 26-1, Declaration of Rana Wilkinson, pp. 1-152.

A.    <u>Authentication</u>

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See Fed.R.Civ.P. 56(e)*; *Beyene v. Coleman Sec. Servs., Inc*., 854 F.2d 1179, 1181 (9th

1    Cir.1988). Authentication is a "condition precedent to admissibility," and this condition is

2    satisfied by "evidence sufficient to support a finding that the matter in question is what its

3    proponent claims." Fed.R.Evid. 901(a). Unauthenticated documents cannot be considered in a

4    motion for summary judgment. *See Canada v. Blain's Helicopters, Inc*., 831 F.2d 920, 925 (9th

5    Cir.1987).

6         In a summary judgment motion, documents authenticated through personal knowledge

7    must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the

8    affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*,

9    831 F.2d at 925 (citation omitted). However, a proper foundation can rest on any manner

10   permitted by Federal Rule of Evidence 901(b) or 902. *See* Fed.R.Evid. 901(b) (providing ten

11   approaches to authentication); Fed.R.Evid. 902 (self-authenticating documents need no extrinsic

12   foundation). An inquiry into authenticity concerns the genuineness of an item of evidence, not its

13   admissibility. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

14   B.    Hearsay

15        Hearsay is "a statement, other than one made by the declarant while testifying at the trial

16   or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). In

17   the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-

18   hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules

19   803, 804 or 807. *See* Fed.R.Evid. 802. An out-of-court statement is not hearsay if offered for any

20   purpose other than the truth of whatever the statement asserts." *United States v. Lopez*, 913 F.3d

21   807, 826 (9th Cir. 2019). For example, "an out-of-court statement introduced to prove that the

22   person to whom the statement was communicated had notice of something" is not hearsay. *Kunz*

23   *v. Utah Power & Light Co*., 913 F.2d 599, 605 (9th Cir. 1990).

1    Deposition testimony, irrespective of its contents, is ordinarily hearsay when submitted at

2    trial or a motion hearing involving live witness testimony but not in a summary judgment

3    motion. *See* Fed.R.Civ.P. 56(c) & (e) (allowing the use of deposition testimony in a summary

4    judgment motion). Also, "at summary judgment a district court may consider hearsay evidence

5    submitted in an inadmissible form, so long as the underlying evidence could be provided in an

6    admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands*

7    *Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

8    C.    Ruling

9        With the foregoing principles in mind, the Court overrules Pierce County's objections:

10        1.    Exhibits 3, 4, 5, and 23. Exhibits 3, 4, and 5 are interviews of Pierce County

11    employees during the November 2017 complaint; Exhibit 23 is a copy of Pierce County's

12    Alcohol and Controlled Substance Testing Policies. Dkt. 26-1, Wilkinson Decl. These

13    documents were produced by Pierce County to Ms. Wilkinson in discovery. Thus, they are

14    admissible on a motion for summary judgment as they are self-authenticating and constitute

15    admissions of a party opponent. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454

16    F. Supp. 2d 966, 972 (C.D. Cal. 2006) (authentication may be accomplished by judicial

17    admission, such that documents produced during discovery are deemed authentic when offered

18    by a party-opponent) (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881,

19    889 n.12 (9th Cir. 1996)).

20        2.    Exhibits 1, 2, 7, 10, 11, and 12. Exhibits 1, 11, and 12 are letters received by Ms.

21    Wilkinson from L&I; Exhibit 2 is a L&I notice of violation; Exhibit 7 is a Pierce County

22    Sheriff's Department Incident Report; and Exhibit 10 is a report made by Ms. Wilkinson to L&I.

23    The Court finds that the documents appear sufficiently genuine in terms of "appearance,

1    contents, [and] substance…taken together with all the circumstances," allowing the Court to

2    conclude that the documents are what they appear to be, *i.e.*, documents from state public

3    agencies. *See* Fed. R. Evid. 901(b)(4).

4        Ms. Wilkinson testified that she received Exhibits 1, 11 and 12 in response to complaints

5    she filed (Dkt. 26-1, Wilkinson Decl., ¶¶ 2, 9, 10), and offers the letters as proof that she filed the

6    complaints and received responses. To the extent Ms. Wilkinson prepared, received or

7    participated in communications, she has personal knowledge of the material and her testimony

8    suffices to authenticate the exhibits. *See*, *e.g. Maier v. Pacific Heritage Homes, Inc*., 72

9    F.Supp.2d 1184, 1190 (D.Or.1999).

10       Pierce County admits that it received Exhibit 2 (L&I violation notice) (*see* Dkt. 7, ¶ 3.3)

11   and Ms. Wilkinson testified that the exhibit was photocopied from the violation notice posted on

12   a wall at work. Dkt. 26-1, Wilkinson Decl., ¶ 3. The document is not hearsay as Ms. Wilkinson

13   offers it as proof that Pierce County had notice of the complaint and violation. Dkt. 26, p. 10.

14       Ms. Wilkinson testified that the incident report identified as Exhibit 7 was completed by

15   the Pierce County Sheriff's Department on June 22, 2018. Dkt. 26-1, Wilkinson Decl., ¶ 5.

16   Pierce County admits that Ms. Wilkinson filed the report. Dkt. 7, ¶ 3.19. In addition, the report is

17   not hearsay as it is offered to prove that Ms. Wilkinson made a report, not that the information in

18   the report is true. Dkt. 26, p. 12.

19       Ms. Wilkinson testified that Exhibit 10 is a report she made to L&I on September 2,

20   2018. Dkt. 26-1, Wilkinson Decl., ¶ 8. The document is not hearsay as she is offering it to prove

21   that she made the complaint. Dkt. 26, p. 12.

22       3.    Exhibit 6 is an application for a driving record for Ocean Shores. Ms. Wilkinson

23   testified that she filled out this application on April 22, 2017. Dkt. 26-1, Wilkinson Decl., ¶ 4.

1   The exhibit may be offered as proof that Ms. Wilkinson submitted the application.

2          4.     Exhibit 8 is a letter dated February 27, 2018 from Ms. Wilkinson's former

3   attorney to Pierce County regarding Ms. Wilkinson's report of harassment and assault. Ms.

4   Wilkinson testified that she helped write this letter and hired Mr. Petrich to send the letter. Dkt.

5   26-1, Wilkinson Decl., ¶ 6. Pierce County admits that it received and responded to the letter. Dkt.

6   7, ¶¶ 3.15, 3.16. Additionally, Ms. Wilkinson offers the letter as proof that Pierce County was

7   put on notice of her complaints. Dkt. 26, p. 12.

8          5.     Exhibit 13 is a daily time report from November 26, 2018 reflecting that Ms.

9   Wilkinson was tasked with washing trucks for 40 hours. Ms. Wilkinson testified that she filled

10  out this report at the instruction of Jeff Skoda. Dkt. 26-2, Wilkinson Decl., ¶ 11. Jeff Skoda

11  testified that he planned for her to report to the CMF on November 27, 2018 until the results of

12  the return to work drug screen were received. Dkt. 19, Skoda Decl., ¶ 8.

13         6.     Exhibit 14 is an email string dated November 26, 2018 between Ms. Wilkinson

14  and her Teamsters Local Union 313 Representative Terra Ament. Ms. Wilkinson testified that

15  she created her emails in this string and received the responses from Ms. Ament. Dkt. 26-1,

16  Wilkinson Decl., ¶ 12. Ms. Wilkinson offers the emails as evidence of what she was doing on

17  that morning not for the truth of the matter asserted. Dkt. 26, p. 14. As the exhibit is offered as

18  evidence of Ms. Wilkinson's state of mind on that day, it is an exception to the rule against

19  hearsay. *See* FRE 803(3).

20         7.     Exhibit 15 is email correspondence dated November 6, 2018 between Ms.

21  Wilkinson and PCHR with attachments containing FMLA documentation. Ms. Wilkinson

22  testified that she created this email. Dkt. 26-1, Wilkinson Decl., ¶ 13. The attached FMLA

23  documentation is not offered not for the truth of the matter asserted, but to show that Ms.

REPORT AND RECOMMENDATION - 15

1    Wilkinson provided the FMLA documentation to PCHR. Dkt. 26, p. 14. Pierce County admits

2    that it received the email and FMLA paperwork. Dkt. 7, ¶ 3.29.

3         8.    Exhibit 16 is Ms. Wilkinson's December 11, 2018 letter of resignation and a letter

4    dated December 12, 2018 to Ms. Wilkinson from her Union Representative Terra Ament. Ms.

5    Wilkinson testified that she wrote the resignation letter and received the letter from Ms. Ament.

6    Dkt. 26-2, Wilkinson Decl., ¶ 14. The exhibit is not hearsay as Ms. Wilkinson is offering it to

7    show that Pierce County received her resignation, not for the truth of the matter asserted. Dkt.

8    26, p. 15. The letter from Ms. Ament confirms that Ms. Wilkinson's grievance was denied. Ms.

9    Wilkinson testified to this fact in her deposition. Dkt. 22-1, Johnson Decl., Ex. 24, Wilkinson

10    Dep., 38:16-24.

11        9.    Exhibit 17 is a letter from L&I dated December 26, 2018, notifying Pierce County

12    of vaccine violations and a fine. Ms. Wilkinson testified that she obtained this letter in response

13    to her written complaint. Dkt. 26-2, ¶ 15. Pierce County admits that it was fined for this violation

14    in 2018. Dkt. 7, ¶ 3.23.

15        10)   Exhibit 18 is a copy of the FMLA leave paperwork completed by Ms.

16    Wilkinson's doctor in September and October 2018. Ms. Wilkinson testified that she provided

17    these documents to PCHR. Dkt. 26-1, Wilkinson Decl., ¶ 16 (with receipt stamp by PCHR). Ms.

18    Wilkinson's doctor can testify as to the information contained in the reports. Ms. Wilkinson is

19    offering the reports as proof that she provided the FMLA paperwork to PCHR. Dkt. 26, p. 15.

20        11)   Exhibit 19 are two letters from Pierce County (dated October 19, 2018 and

21    November 13, 2018) granting Ms. Wilkinson's request for catastrophic leave. Ms. Wilkinson

22    testified that she received these letters in response to her request for leave. Dkt. 26-1, Wilkinson

23    Decl., ¶ 17. Pierce County acknowledges that Ms. Wilkinson took approved FMLA leave from

1    September 26, 2018 to November 26, 2018, and from November 26, 2018 until December 11,

2    2018. Dkt. 16, p. 7.

3        12)    Exhibit 20 is a copy of a catastrophic leave request submitted by Ms. Wilkinson

4    to Pierce County. Ms. Wilkinson testified that she wrote and submitted this form and received

5    the response. Dkt. 26-1, Wilkinson Decl., ¶ 18. The exhibit is not hearsay as Ms. Wilkinson

6    offers it to show Pierce County acknowledged that her request for leave was based on her

7    allegations that she suffered injury due to work conditions. Dkt. 26, p. 16.

8        13)    Exhibit 21 are three hand-written documents. Ms. Wilkinson testified that she

9    wrote and submitted these documents to Mr. Skoda on November 26, 2018 and asked him to sign

10   them, but he refused. Dkt. 26-1, ¶ 19. They may be submitted for that purpose.

11       14)    Exhibit 22 is a screenshot of a map taken from Google's internet site, which is

12   submitted to show that Ms. Wilkinson's assigned workstation (Purdy) is 26 miles from the

13   workstation where she was ordered to report (Spanaway). The Court may take judicial notice of

14   Google's maps and satellite images as a source whose accuracy cannot reasonably be questioned.

15   *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (internal quotations

16   omitted). Exhibit 22 appears sufficiently genuine in terms of "appearance, contents, [and]

17   substance…taken together with all the circumstances," to allow the Court to conclude that the

18   document was taken from Google's internet site. *See* Fed. R. Evid. 901(b)(4).

19       15)    Pierce County also moved to strike portions of Ms. Wilkinson's response brief as

20   not being supported by evidence in the record (Pages 1, lines 23-25; Page 2, lines 1-3; Page 8,

21   lines 4-8). The motion is denied as Ms. Wilkson has provided the appropriate citation to the

22   record. Dkt. 26, pp. 17-18.

23

1

DISCUSSION

2  A.    Violation of FMLA and WFLA

3          The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), created two interrelated,

4  substantive rights: (1) the employee has a right to use certain amounts of leave for protected

5  reasons, and (2) the employee has a right to return to her job or an equivalent after using

6  protected leave. *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir.2011). Section

7  2615(a)(2) makes it unlawful for employers to retaliate or discriminate against a person for

8  opposing any violation of their FMLA right to leave. Section 2615(a)(1) makes it unlawful for an

9  employer to "interfere with, restrain or deny" the exercise or attempt to exercise FMLA leave.

10         The Washington Family Leave Act, RCW 49.78.300, "mirrors its federal counterpart and

11  provides that courts are to construe its provisions in a manner consistent with similar provisions

12  of the FMLA." *Washburn v. Gymboree Retail Stores, Inc*., 2012 WL 5360978, *7, 2012 U.S.

13  Dist. LEXIS 156240, *21 (W.D. Wash. Oct. 30, 2012).

14         To establish a prima facie case, Ms. Wilkinson must establish (1) she was eligible for the

15  FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave

16  under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her

17  employer denied her FMLA benefits to which she was entitled. *Sanders v. City of Newport*, 657

18  F.3d 772, 778 (9th Cir.2011) (citing *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir.2006)).

19         Ms. Wilkinson contends that Pierce County interfered with the exercise of her rights

20  under the FMLA when she "was [not] return[ed] to her original work duties and location or a

21  location within 20 miles of her original work location." Dkt. 1-2, p. Pierce County does not

22  dispute that Ms. Wilkinson was eligible for FMLA protections and was entitled to leave from

23  September 26, 2018, to November 26, 2018, but contends that it did not deny Ms. Wilkinson

1    FMLA benefits or deny her the ability to return to her prior position or an equivalent position

2    with equivalent benefits. Dkt. 16, p. 9.

3         "An equivalent position" is "one that is virtually identical to the employee's former

4    position in terms of pay, benefits and working conditions, including privileges, perquisites and

5    status" and "must involve the same or substantially similar duties and responsibilities, which

6    must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. §

7    825.215(a). "[E]vidence that an employer failed to reinstate an employee who was out on FMLA

8    leave to her original (or an equivalent) position establishes a prima facie denial of the employee's

9    FMLA rights." *Sanders*, 657 F.3d at 778.

10        It is undisputed that Ms. Wilkinson was restored to her prior position as Maintenance

11   Technician, that the rate of her pay and benefits were not altered, and that the task she was

12   assigned – washing vehicles – was within her position description. Dkt. 22, p. 14. It is also

13   undisputed that Ms. Wilkinson's assignment to the CMF was temporary, until the results of her

14   return to work drug screening were received. Dkt. 1-2, ¶¶ 3.26; 3.28.

15        Ms. Wilkinson argues that although she was "technically" restored to a Maintenance

16   Technician position, Pierce County changed her job sufficiently to raise an issue of material fact

17   as to whether the position is equivalent to her former position. *Id.* Specifically, Ms. Wilkinson

18   argues that she was assigned to report to the CMF in Spanaway (26 miles from her prior

19   reporting facility in Purdy), where she could not report on further L&I violations and was

20   assigned one of the least desirable tasks.[3] However, the CMF is the address associated with the

21   complaints made to and inspections conducted by L&I. Dkt. 20, p. 1-2.

22

23   _____

[3] Ms. Wilkinson also argues that the task of washing vehicles does not qualify as a safety sensitive task because she would have been required to drive the vehicles. However, there is no evidence that she would have been required to drive the vehicles.

REPORT AND RECOMMENDATION - 19

1    Ms. Wilkinson also argues that the random drug testing was a pretext for her

2    reassignment as the testing could have been done immediately. However, the evidence reflects

3    that the processing time for random drug testing, which was begun on the day of Ms.

4    Wilkinson's return, can take between three days to a week. Dkt. 24, Davis Decl., pp. 1-2;

5    Exhibits A and B.[4]

6    Ms. Wilkinson likens her temporary assignment to the CMF to the facts in *Sicilia v.*

7    *Boeing Co.*, 775 F.Supp.2d 1243, 1247 (W.D. Wash.2011) (*overruled on other grounds*). The

8    case is not analogous, as here it cannot be disputed that Ms. Wilkinson was not entitled to

9    perform all aspects of her position until she completed the drug testing. *See Shirley v. Precision*

10    *Castparts Co*., 726 F.3d 675, 682 (5th Cir.2013) (Under 29 U.S.C. § 2614(a)(3), an employee

11    must be entitled to the position to which she seeks reinstatement). If an employee is no longer

12    qualified for the position because of the employee's inability to attend a necessary course, renew

13    a license, etc., as a result of the leave, the employee shall be given a reasonable opportunity to

14    fulfill those conditions upon return to work. 29 C.F.R. § 825.215(b). Pierce County provided Ms.

15    Wilkinson an opportunity to fulfill the CDL license requirements that lapsed during her leave by

16    performing a task that did not require her CDL license. However, Ms. Wilkinson failed to avail

17    herself of this opportunity because she left the same day she returned to work at her original post

18    and never returned.

19    Ms. Wilkinson fails to establish a substantial change in work function in part, because she

20    was at work for only one day after she returned from FMLA leave. When she returned to work at

21    her original post, Ms. Wilkinson was tasked with logging on to her computer to make sure she

22

23    ───────────────
[4] Plaintiff's citation to section 3.4.1(e) of the Pierce County Alcohol and Controlled Substance
Policy relates only to reasonable suspicion testing, not return to work testing, and is therefore not
applicable to the facts of this case. Dkt. 24, Davis Decl., Ex. A.

had proper access and was temporarily assigned to wash trucks at another location. Neither of these tasks shows a substantial change in job function that would indicate she was denied her original position or a substantially similar position when she returned to work. Although Ms. Wilkinson raised a concern of being at a facility where she might be "too close" to Mr. Campbell, there is no evidence that Pierce County was legally restricted from assigning her to the CMF or any other location. Ms. Wilkinson had been assigned to other facilities in the past, to which she would report and receive work instructions that then took her to locations throughout the county. Dkt. 22-1, Johnson Decl., Ex. 24 Wilkinson Dep., 16:3-13.

However, while there is no requirement under the FMLA to return Ms. Wilkinson to a position at a location within 20 miles of her prior position, the parties cite to such a requirement under the WFLA. RCW 49.78.070(1)(b) – Subject to subsection (2) of this section, an employee who exercises any right provided under RCW 49.78.030 shall be entitled, upon return from leave or during any reduced leave schedule: (b) To a position with equivalent benefits and pay at a workplace within twenty miles of the employee's workplace when leave commenced. It is undisputed that the CMF is in Spanaway and that it is more than 20 miles from Purdy. It is also undisputed that when Ms. Wilkinson returned to work on November 26, 2018, she reported to Purdy with the same benefits and pay as when her leave commenced. Thus, the 20-mile requirement was satisfied.

The question remains as to whether, after an employee returns to work from WFLA leave, she can be scheduled to report the next day to a temporary assignment more than 20 miles away. The Court concludes that even if this can be considered a technical violation of the WFLA, which has not been addressed by Washington courts, this was not a substantive violation as the assignment was only temporary, Ms. Wilkinson was previously assigned to the Spanaway

1    location and other locations further from Purdy (*i.e.*, Bonney Lake), and her position often

2    required her to work in various places around the County. Dkt. 22-1, Johnson Decl., Ex. 24,

3    Wilkinson Dep., 12:20-25-13:1-5.

4         Viewing the facts in the light most favorable to Ms. Wilkinson, as the Court is required to

5    do at the summary judgment stage, the Court finds that Ms. Wilkinson has failed to raise a

6    question of material fact as to whether Pierce County restored her to her original position or that

7    the temporary assignment constituted a substantial change in that position. Unlike the plaintiff in

8    *Sicilia*, who was subjected to drastic changes in his job function and placed in a basement office,

9    Ms. Wilkinson was temporarily scheduled to perform a task that was within her job description

10    for the express purpose of completing a mandatory drug test so that she could resume all of her

11    job duties. Based on the foregoing, the undersigned recommends that Pierce County's motion for

12    summary judgment on Ms. Wilkinson's FMLA and WFLA claims be granted.

13   B.     <u>Wrongful Termination in Violation of Public Policy</u>

14         In her second cause of action, entitled "Wrongful Termination in Violation of Public

15    Policy Wrongful Termination in Violation of RCW 49.78.300," Ms. Wilkinson claims that she

16    was entitled to the protections and benefits of the WFLA; Pierce County interfered with,

17    restrained, and denied her the exercise of those rights by failing to return her to her prior position

18    or a post within 20 miles of her prior post; and she was harassed into quitting her job. Dkt. 1-2,

19    pp. 8-9.

20         A plaintiff can bring a claim for wrongful termination in violation of public policy:

21      (1) where employees are fired for refusing to commit an illegal act; (2) where

22      employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in

23      retaliation for reporting employer misconduct; *i.e.*, whistleblowing.

REPORT AND RECOMMENDATION - 22

1    *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 276, 685 P.2d 1081 (1984) (citing *Gardener*

2    *v. Loomis Armored Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996); *Rose v. Anderson Hay and*

3    *Grain Co.*, 184 Wn.2d 268, 276, 358 P.3d 1139 (2015) (citing *Gardner, supra*). Under each

4    scenario, a plaintiff must identify the recognized public policy and demonstrate that the employer

5    contravened the policy. *Rose*, 184 Wn.2d at 276.

6        To prevail, Ms. Wilkinson must establish (1) the existence of a clear public policy (the

7    clarity element); (2) that discouraging the conduct in which she engaged would jeopardize the

8    public policy (the jeopardy element); (3) that the public-policy-linked conduct caused the

9    dismissal (the causation element); and (4) the defendant must not be able to offer an overriding

10   justification for the dismissal (the absence of justification element). *Lee v. Rite Aid Corp.*, 917

11   F.Supp.2d 1168, 1175 (E.D. Wash.2013) (quoting *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 529,

12   259 P.3d 244 (2011)) (*both overturned on different grounds by Rose v. Anderson Hay and Grain*

13   *Co.*, 184 Wn.2d 268, 358 P.3d 1139 (2015)). [5]

14       Ms. Wilkinson alleged that Pierce County "interfered with, restrained, and denied [her]

15   exercise of, or [her] attempt to exercise her right under Washington State's Family Leave Act, to

16   return from protected leave to her prior position and post or a post within 20 miles of her prior

17   post." Dkt. 1-2, p. 8. Ms. Wilkinson claims that in doing so, Pierce County harassed her into

18   quitting her job. Id., pp. 8-9. It is not disputed that the WFLA is a clear public policy. However,

19   because Ms. Wilkinson resigned from her job and was not fired, she must first establish that she

20   was constructively discharged.

21

22   _____

23   [5] Ms. Wilkinson argues that these factors (known as the *Perritt* factors) do not apply to her
     constructive discharge claim because her claim is based on retaliation stemming from her L&I
     complaints. Dkt. 22, p. 22. However, Ms. Wilkinson's wrongful termination in violation of a
     public policy is specifically tied to Pierce County's conduct under the WFLA. Dkt. 1-2, pp. 8-9.

1    "A cause of action for wrongful discharge in violation of public policy may be based on

2    'either express or constructive' discharge." *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc*.,

3    6 Wash.App.2d 803, 431 P.3d 1018, 1031 (2018) (*review denied*, 193 Wash.2d 1006, 438 P.3d

4    115 (2019)). "The elements of a claim of constructive discharge are that (1) the employer

5    deliberately made working conditions intolerable, (2) a reasonable person in the employee's

6    position would be forced to resign, (3) the employee resigned because of the intolerable

7    condition and not for any other reason, and (4) the employee suffered damages as a result of

8    being forced to resign." *Peiffer*, at 1031. "The "intolerable" element can be shown by aggravated

9    circumstances or a pattern of conduct." *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144

10   Wn.App. 34, 44, 181 P.3d 864 (2008) (internal citations omitted).

11    As previously discussed, Ms. Wilkinson has failed to raise a question of material fact as

12   to whether Pierce County intentionally interfered with her WFLA rights. Additionally, there is

13   no evidence that Pierce County engaged in a continuous pattern of discriminatory treatment

14   related to her WFLA rights as Ms. Wilkinson's claim relates to a single incident. Ms. Wilkinson

15   also cannot show that a reasonable person in her position would have felt compelled to resign as

16   she was returned to the same position and only had to wait for her CDL to be revalidated to be

17   fully returned to all duties within her position. Moreover, Ms. Wilkinson's evidence reflects that

18   she resigned for a reason other than her WFLA rights. *See* Dkt. 26-1, Wilkinson Decl., Ex. 16

19   ("since reporting unsafe working conditions in 2015" she has been retaliated against). RCW

20   49.17.160 is the statutory remedy for claims of retaliation related to Ms. Wilkinson's L&I

21   complaints and she concedes that this remedy is no longer available.

22    Thus, the undersigned recommends that Pierce County's motion for summary judgment

23   on Ms. Wilkinson's claims of wrongful termination in violation of RCW 49.78.300 be granted.

REPORT AND RECOMMENDATION - 24

C.    RCW 49.17.160 Retaliation Claim

Ms. Wilkinson filed a complaint with L&I but failed to file a complaint in the Superior Court within the statutorily mandated 30 days. Dkt. 22, p. 21. Thus, she concedes that her RCW 49.17.160 retaliation claim is subject to dismissal. Accordingly, it is recommended that Pierce County's motion for summary judgment on this claim be granted.

OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than Wednesday, **February 24, 2021.** The Clerk should note the matter for Friday, **February 26, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed six (6) pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of February, 2021.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 25